**United States District Court**
For the Northern District of California

1

2

3 UNITED STATES DISTRICT COURT

4 NORTHERN DISTRICT OF CALIFORNIA

5 BURROUGHS PAYMENT SYSTEMS, INC.,          Case No. C-11-06268 JCS

6

7         Plaintiff,          **ORDER GRANTING IN PART AND**
**DENYING IN PART DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S**
8     v.          **FIRST AMENDED COMPLAINT [Docket**
**No. 33]**
9 SYMCO GROUP, INC.,

10         Defendant.
_____/

11

12 **I.     INTRODUCTION**

13       This action concerns intellectual property relating to Plaintiff's check processing business, in

14 particular, password protected diagnostic software that is stored on scanning equipment provided by

15 Plaintiff to its customers.  Plaintiff alleges that Defendant, a competitor in the check processing

16 business, has used this software without Plaintiff's authorization when servicing the equipment of

17 Plaintiff's customers.  Plaintiff asserts claims for copyright infringement, violation of the Digital

18 Millenuium Copyright Act ("DMCA"), and misappropriation of trade secrets under the California

19 Uniform Trade Secrets Act ("CUTSA").

20       Defendant brings a Motion to Dismiss Plaintiff's First Amended Complaint ("Motion")

21 seeking dismissal for failure to state a claim of all of Plaintiff's claims.  A hearing on the Motion

22 was held on Friday, May 4, 2012 at 1:30 p.m.  For the reasons stated below, the Motion is

23 GRANTED in part and DENIED in part.[1]

24

25

26

27 _____

28       [1]The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to
28 U.S.C. § 636(c).

United States District Court

For the Northern District of California

## II.   BACKGROUND

### A.   The First Amended Complaint

Plaintiff Burroughs Payment Systems, Inc. ("Burroughs") alleges that it is a "manufacturer of a comprehensive suite of products that include traditional desktop check and full-page enabled scanning equipment, as well as proprietary and confidential computer programs that are stored on the equipment." FAC ¶10.  These computer programs are alleged to be "preloaded" or "embedded" in the equipment before it is delivered to Burroughs' clients, "for example banks."  *Id*.  One such computer program is known as CSE Utilities Toolbox ("CSE"), which can be accessed by entering a password.  *Id*. ¶ 11.  Once the correct password has been entered, an interactive screen, or "Toolbox" appears, "which then provides the user with access to a variety of utility software programs that can be used to conveniently service the equipment."  *Id*.  One of these is a program called Maintenance Test Routines ("MTR"), which is alleged to be a type of diagnostic software that provides service technicians information "for quickly and accurately identifying and diagnosing any problem(s) with such equipment."  *Id*. ¶ 12.

When Burroughs delivers its scanning equipment to customers, the equipment "includes a hard drive (or non-volatile memory) with one or more executable program files for the CSE/MTRs stored on it."  *Id*. ¶ 15.  "When a user of the equipment, such as an authorized service technician, accesses the CSE/MTRs, one or more executable program files are copied from the hard drive into RAM (or volatile memory) so that they can be executed by a processor."  *Id*.

Burroughs alleges "on information and belief" that Defendant Symco Group, Inc. ("Symco") has "made widespread use of Burroughs' CSE and MTRs while servicing Burroughs' equipment."  *Id*. ¶ 17.  In particular, Burroughs alleges "on information and belief" that around December 2010, Symco "or someone acting on [Symco's] behalf unlawfully accessed, used, ran, loaded and/or copied from a hard drive onto random access memory (RAM), a form of temporary memory, Burroughs' CSE and MTR programs while servicing repairs on Burroughs' equipment in several banks located in California, including a City National Bank in Alameda, California and a City National Bank in Los Angeles, California."  *Id*. ¶ 18.  Burroughs further alleges that Symco's "unlawful activity has occurred at other customer locations in the United States and may have

occurred at other customer locations in this judicial district." *Id*.  According to Burroughs, Symco used Burroughs' CSE and MTRs to "identify and diagnose problems on the equipment." *Id*.  In so doing, Symco allegedly "caused one or more" of the executable program files to be copied from the hard drive into the RAM of a Burroughs' customer's computer.  *Id*.  ¶ 20.  Burroughs further contends that Symco has "illegally enriched itself at Burroughs' expense by making unauthorized use of" its CSE and MTR programs "for servicing Burroughs computers that are operated by Burroughs' customers."  *Id*. ¶ 1.

Burroughs asserts claims for copyright infringement ("Claim One"), illegal circumvention of security measures in violation of the DMCA ("Claim Two") and misappropriation of trade secrets under CUTSA ("Claim Three").  In support of its copyright infringement claim, Burroughs alleges that it owns the federally registered copyrights for the CSE and MTR software programs, which it acquired under a written agreement between itself and Unisys Corporation. *Id*. ¶¶ 51-57.  According to Burroughs, Unisys is the author of the CSE and MTR programs. *Id*. ¶ 51.  Burroughs alleges that Symco infringed its copyrights because "[a] person who accesses and uses the copyrighted CSE and MTR programs without permission or authorization from Burroughs creates an unauthorized copy of the programs when the executable program files are loaded from the hard drive (or non-volatile memory) of the equipment into RAM (or volatile memory) in order to be executed by a processor." *Id*. ¶ 63.

In support of Claim Two, asserted under the DMCA, Burroughs alleges that it "utilizes a variety of security measures to control access to its confidential and proprietary computer programs and, in particular, to prevent unauthorized users from gaining access to these computer programs [and that] Burroughs' programs do not automatically run on the equipment when the equipment is turned on." *Id*. ¶ 70.  According to Burroughs, prior to accessing these programs (including CSE and the MTRs), copyright notices appear "indicating that the materials are copyrighted with all rights reserved and further indicating that they are to be used only by Unisys (now Burroughs) personnel or a licensee." *Id* ¶ 71.  Burroughs alleges that in order to access these proprietary programs, Symco "had to circumvent or otherwise avoid the protection that Burroughs' password scheme was intended to provide." *Id* ¶ 74.  Burroughs alleges, upon information and belief, that

United States District Court

For the Northern District of California

3

Symco "obtained knowledge of this password through improper means and used it to gain unlawful access to Burroughs' copyrighted computer programs." *Id*. ¶ 75.  However, it also alleges that Symco has refused to tell Burroughs how it was able to access the proprietary software and therefore, that Symco "may have circumvented or avoided the password scheme by some other means, instead of, or in addition to, using Burroughs' password without authorization." *Id*. ¶ 78. Whatever the means, Burroughs alleges, Symco has circumvented Burroughs' security measures in violation of the DMCA, 17 U.S.C. § 1201(a)(1).  *Id*. ¶¶ 79-80.

In support of its CUTSA claim (Claim Three), Burroughs alleges that its "computer programs and accompanying materials contain trade secrets, *i.e.*, information that is not commonly known by or available to the public, derives economic value from not being generally known to others or readily ascertainable by others using proper means, and is the subject of reasonable efforts to maintain its secrecy." *Id*. ¶ 87.  Among the measures used to protect the secrecy of its trade secrets, Burroughs alleges, are prominent copyright notices that appear when a user attempts to access CSE and the MTRs. *Id*. ¶ 88.  These notices are embedded in the CSE and MTR source code. *Id*.  Burroughs alleges that its customers, "including City National Bank, are not licensees and they are prohibited from using Burroughs' diagnostic and maintenance software embedded in the machines they purchased or leased." *Id*. ¶ 89.  Burroughs further alleges that Symco "misappropriated Burroughs' trade secrets by, *inter alia*, gaining access to Burroughs' password through improper means, using that password without authorization to make unlawful use of Burroughs' computer programs and/or accompanying materials, and ignoring the copyright notices that expressly prohibit access by unauthorized users." *Id*. ¶ 91.

**B.  Procedural Background**

On September 21, 2010, Burroughs filed an action against Symco in the United States District Court for the Northern District of Georgia ("the Georgia Action").  The allegations and claims asserted in the Georgia Action are very similar to the allegations and claims in the instant

United States District Court
For the Northern District of California

action.  *See* Docket No. 15, Ex. A.[2]  However, in the initial complaint in the Georgia Action, Burroughs did not provide any specific examples of the alleged misconduct, instead only alleging generally that "[u]pon information and belief, Defendant or someone acting on Defendant's behalf unlawfully accessed, used and/or copied Burroughs' CSE and MTR programs while servicing repairs on equipment for at least one of Burroughs' customers."  *Id.* ¶ 14.  The allegations in the Georgia Action also differed from those of the First Amended Complaint in the instant action with respect to the means by which Symco allegedly accessed CSE and the MTRs: in the Georgia Action, Burroughs alleged only that Symco accessed these program through the unauthorized use of passwords whereas in the instant action, Burroughs includes an additional allegation that Symco may have used other means of circumvention as well (as discussed above).  The same three claims were asserted in the Georgia Action as Burroughs asserts in the instant action.  *Id.* ¶¶ 18-53.

On November 5, 2010, Symco brought a motion to dismiss in the Georgia Action ("Georgia Motion to Dismiss").  *See* Docket No. 15, Ex. C.  In the Georgia Motion to Dismiss, Symco sought dismissal of all three claims asserted by Burroughs.  *Id.*  First, Symco argued that Burroughs' allegations relating to its alleged wrongful conduct were so bare and conclusory that they did not satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure under the standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *Id.* at 6, 9-10.  As a result, Symco asserted, it was impossible to determine which specific right under Section 106 of the Copyright Act was alleged to be violated or whether the defenses in 17 U.S.C. § 117 might be available to Symco.  *Id.* at 7-11.  Second, Symco sought the dismissal of the DMCA claim on the ground that unauthorized use of a password is not "circumvention" of a technological control and therefore does not violate the DMCA.  *Id.* at 12-16.  Third, Symco asserted that Burroughs' claim for misappropriation of trade secrets failed because Burroughs alleged only that its computer programs and accompanying

---

[2]It is undisputed that the Court may consider the documents that are a matter of public record in the Georgia Action pursuant to Rule 201 of the Federal Rules of Evidence without running afoul of Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-689
(9th Cir. 2001).

materials contain trade secrets without identify the particular aspects of the programs alleged to constitute trade secrets. *Id*. at 18. Even if Burroughs' allegations were sufficient to show the existence of trade secrets, Symco argued, they failed to show that Burroughs undertakes reasonable efforts to maintain the secrecy of those trade secrets, that Symco used "improper means" to obtain Burroughs' trade secrets, or that Symco used or disclosed the trade secrets. *Id*. at 19-23.

On December 13, 2011, the district court in the Georgia Action issued an order granting in part and denying in part Symco's motion to dismiss ("the December 13 Order"). Opposition, Ex. B. The Georgia court agreed with Symco that Burroughs' copyright infringement claim was too conclusory to state a claim but found that Burroughs might be able to cure the deficiency by amendment and therefore dismissed that claim with leave to amend. *Id*. at 3-9. On the other hand, the court rejected Symco's argument that Burroughs had not stated a claim for misappropriation of trade secrets. *Id*. at 19-22. The court found that the allegations were sufficient to survive a motion to dismiss, noting that "although [Burroughs] does not describe in detail those materials which it contends are trade secrets, the complaint certainly puts defendant on adequate notice that materials it viewed upon accessing plaintiff's programs are the source of the alleged wrongdoing." *Id*. at 18. The Court also found that the allegations were sufficient to show that Burroughs took reasonable measures to protect the secrecy of the alleged trade secrets, that Symco used improper means to obtain them, and that Symco used those trade secrets, thereby stating a claim for trade secret misappropriation. *Id*. at 19-22.

Finally, the Georgia court found that Burroughs failed to state a claim for violation of the DMCA, agreeing with Symco that unauthorized  use of a password does not constitute "circumvention" under the DMCA. *Id*. at 9-16. In reaching this conclusion, the court conducted a detailed analysis of the case law on this question, which has not been decided by any court of appeal, acknowledging that there is a split of authority among district courts. *Id*. at 10-11. The court cited a number of district court decisions holding that unauthorized use of a password does *not* constitute a violation of the DMCA and then went on to state that "[t]he Northern District of California has taken the opposite view that the unauthorized use of a valid password 'circumvents' technology measures." *Id*. at 12. The court noted that "two reported opinions [from the Northern District of

1   California] addressing this issue directly reached their conclusion with little or no analysis or

2   reasoning," while an unreported opinion, *Actuate Corp. v. IBM*, 2010 WL 1340519 (N.D. Cal. April

3   5, 2010)(Spero, J.), "actually addresses the circumvention question and the conflicting authorities in

4   some detail."  The Georgia court then provided specific reasons for declining to adopt this Court's

5   reasoning in *Actuate*, instead following the approach taken by district courts that have found that the

6   DMCA does not cover unauthorized use of a password.  *Id*.  at 14-16.  Accordingly, the court

7   dismissed the DMCA claim for failure to state a claim.  *Id*.  at 16.  The court rejected Burroughs'

8   argument that it should be permitted to amend because "discovery may yield additional details

9   concerning defendant's allegedly unauthorized access."  *Id*.  The court stated, "This puts the cart

10  before the horse.  It is not permissible to file suit and use discovery as the sole means of finding out

11  whether you have a case." *Id*.  Therefore, the Georgia court dismissed Burroughs' DMCA claim

12  with prejudice.

13      On the same day the Georgia court issued its order, Burroughs filed a complaint in the

14  Northern District of California (the instant action).  As noted above, the factual allegations in the

15  instant action are similar to those in the Georgia Action, and Burroughs asserts the same three

16  claims, namely, copyright infringement, violation of the DMCA, and misappropriation of trade

17  secrets.  Burroughs also adds allegations relating to the Georgia Action, in particular, complaining

18  that the Georgia court did not issue its decision on Symco's motion to dismiss for "almost one year"

19  after that motion was fully briefed, allegedly resulting in "significant adverse impact" to Burroughs.

20  FAC ¶¶ 32-34.  Burroughs alleges that in addition to its concern about delay, the instant action was

21  filed in this district because "Burroughs has become aware of additional unlawful activity by

22  [Symco], including the incidents in California."  *Id*., ¶ 36.

23      On December 28, 2011, Burroughs filed an amended complaint in the Georgia Action, as

24  well as a motion to reconsider the December 13 Order to the extent that the court dismissed

25  Burroughs' DMCA claim with prejudice.  The amended complaint in the Georgia Action dropped

26  the DMCA claim.  Soon thereafter, on January 5, 2012, Burroughs filed the First Amended

27  Complaint in this action.  On January 30, 2012, Symco filed a motion to dismiss in the instant action

28  arguing, *inter alia*, that the action should be dismissed on the basis that an identical action was

United States District Court

For the Northern District of California

1  pending in Georgia or, in the alternative, should be transferred to the Northern District of Georgia

2  under 28 U.S.C. § 1404, or stayed until the Georgia Action was resolved.  *See* Docket No. 15.  On

3  February 10, 2012, before the motion to reconsider had been decided by the Georgia court,

4  Burroughs voluntarily dismissed the Georgia Action.  In light of the dismissal of the Georgia Action,

5  Symco withdrew the motion to dismiss and filed a new motion to dismiss on March 2, 2012.  That

6  motion is presently before the Court.

7        **C.      The Motion**

8        In the Motion, Symco argues that all of Burroughs' claims should be dismissed for failure to

9  state a claim.  Symco argues that the claim for copyright infringement fails as a matter of law under

10  17 U.S.C. §§ 117(a)(1) and (c).  Motion at 5-9.  Symco contends that Burroughs' DMCA claim fails

11  under the doctrine of res judicata because it was dismissed with prejudice in the Georgia Action.  *Id*.

12  at 9-12.  Finally, Symco argues that Burroughs' claim for misappropriation of trade secrets fails to

13  state a claim because Burroughs has not adequately alleged the existence of a trade secret or

14  misappropriation.   Motion at 14-17.

15        In its Opposition, Burroughs contends that all of its claims are adequately pleaded.  First,

16  with respect to the copyright infringement claim, Burroughs argues that dismissal under Rule

17  12(b)(6) on the basis of the protections found in 17 U.S.C. §§ 117(a)(1) and (c) would be improper

18  because these sections are affirmative defenses and therefore need not be pleaded around to state a

19  claim.  Opposition at 5.  Moreover, Burroughs asserts, the defenses in 17 U.S.C. §§ 117(a)(1) and (c)

20  do not apply here.  *Id*. at 5-8.  Burroughs also rejects Symco's assertion that the DMCA claim is

21  barred by res judicata.  *Id*. at 8-11. According to Burroughs, the DCMA claim should not be

22  dismissed under the doctrine of res judicata because: 1) the claim in this action is based on a

23  different incident, which happened after the filing of the complaint in the Georgia Action and; 2) the

24  claim in this action is different from the one in the Georgia Action because it does not indicate *how*

25  Symco is defeating the password scheme, whereas the claim in the Georgia Action was based on

26  alleged unauthorized use of passwords; 3) there was no final adjudication because Burroughs

27  dismissed the Georgia Action before the court had decided its motion for reconsideration; and 4)

28  whether res judicata applies raises fact issues that cannot be resolved at the pleading stage of the

**United States District Court**

For the Northern District of California

case.[3]  *Id*.  Finally, Burroughs asserts that it has adequately pleaded the existence of trade secrets and the misappropriation of those trade secrets.  *Id*. at 11-14.  Burroughs also points out that the Georgia court rejected the same arguments and that Symco did not bring a motion for reconsideration.

## III.    ANALYSIS

### A.    Legal Standard

#### 1.    Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  A complaint  must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *som*e viable legal theory."  *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  The factual allegations must be definite enough to "raise a right to relief above the speculative level."  *Id*. at 555.  However, a complaint does not need detailed factual allegations to survive dismissal.  *Id*.  Rather, a complaint need only include enough facts to state a claim that is "plausible on its face."  *Id*. at 570.  That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief.  *Id*. at 557 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2)).  "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

---

[3]As to this last contention, Burroughs' counsel conceded at oral argument that he could identify no particular fact question that must be resolved to decide whether res judicata applies.

United States District Court

For the Northern District of California

**B.      Claim One (Copyright Infringement)**

**1.      Whether a Motion to Dismiss for Failure to State a Claim Can be Granted on the Basis of an Affirmative Defense**

Burroughs suggests that it would be improper for the Court to find on a Rule 12(b)(6) motion that its copyright infringement claim fails because Burroughs has not pleaded around the affirmative defenses raised by Symco under 17 U.S.C. §§ 117(a)(1) and (c).  The Court disagrees.  Burroughs is correct that a plaintiff is not required to anticipate and plead around *all* affirmative defenses.  *See, e.g., Gomez v. Toledo*, 446 U.S. 635, 641 (1980) (holding that plaintiff asserting a claim under 28 U.S.C. § 1983 need not allege bad faith on the part of the defendant, even though the defendant may be entitled to qualified immunity if he acted in good faith, because qualified immunity is an affirmative defense and the burden of pleading it lies with the defendant).  Where, however, facts alleged in the complaint establish the existence of an affirmative defense, a court may dismiss the claim on a Rule 12(b)(6) motion.  *See Jones v. Bock,* 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground");  *Holomaxx Technologies v. Microsoft Corp.*, 783 F.Supp.2d 1097, 1103 (N.D.Cal., 2011) ("The assertion of an affirmative defense properly may be considered on a Rule 12(b)(6) motion where the defense is 'apparent from the face of the [c]omplaint'")(citation omitted).  Therefore, the Court may properly consider whether it is clear from the face of Burroughs' complaint that its copyright infringement claim is barred on the basis of an affirmative defense.

**2.      17 U.S.C. § 117(a)(1)**

Symco contends that it is clear from the face of the complaint that the conduct alleged by Burroughs falls within a category of copying that is "lawful per se" under 17 U.S.C. § 117(a)(1).  The Court concludes that while Symco may ultimately be able to establish that this affirmative defense applies, dismissal on the pleadings on this basis is inappropriate.

To state a claim for copyright infringement, a copyright owner must allege that one of its rights under Section 106 of the Copyright Act has been violated.  Section 106 sets forth the following exclusive rights of a copyright owner:

United States District Court

For the Northern District of California

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106. These rights, however, are subject to the limitations contained in Sections 107 through 120 of the Copyright Act. *Id.*; *see also Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1521 (9th Cir. 1992) ("Each of the exclusive rights created by section 106 of the Copyright Act is expressly made subject to all of the limitations contained in sections 107 through 120"). Thus, an alleged infringer may assert an affirmative defense under Section 117(a)(1).

Section 117(a)(1) states as follows:

(a) Making of additional copy or adaptation by owner of copy.--Notwithstanding the provisions of section 106, it is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided:

(1) that such a new copy or adaptation is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner . . .

17 U.S.C. § 117(a)(1). "Section 117 was implemented to follow 'the recommendations of the National Commission on New Technological Uses of Copyrighted Works [the "CONTU"] with respect to clarifying the law of copyright ownership of computer software.'" *Aymes v. Bonelli*, 47 F.3d 23, 26 (2d Cir. 1995)(quoting H.R.Rep. No. 1307, 96th Cong., 2d Sess., Pt. I, at 23 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6482). "Because the act of loading a program from a medium of storage into a computer's memory creates a copy of the program, the CONTU reasoned that '[o]ne who rightfully possesses a copy of a program . . . should be provided with a legal right to copy it to that extent which will permit its use by the possessor,' and drafted proposed § 117(1) to

United States District Court
For the Northern District of California

1   'provide that persons in rightful possession of copies of programs be able to use them freely without

2   fear of exposure to copyright liability.'" *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 260 (5th

3   Cir.1988) (quoting CONTU Report at 31).

4        In *Telecomm Technical Services, Inc. v. Siemens Rolm Communications, Inc.*,

5   66 F. Supp. 2d 1306 (N.D.Ga.,1998), cited by Symco, the court addressed whether Section 117(a)(1)

6   applied under facts similar to those in this case. That case involved the servicing by the plaintiff of

7   private branch exchanges ("PBXs") manufactured by the defendant, Rolm, and provided to Rolm's

8   customers. *Id.* at 1310. The court explained that a PBX is " a combination of hardware and

9   software that allows businesses with multiple telephone lines (typically over 50) to send and receive

10  telephone calls, both internally and externally." *Id.* In addition to manufacturing the PBXs, Rolm

11  was "in the business of providing parts and service to end users of Rolm PBXs." *Id.* The plaintiffs

12  were independent service organizations ("ISOs") that were also in the business of servicing Rolm

13  PBXs and thus, competed with Rolm for the business of end users. *Id.* In response to various anti-

14  trust claims asserted against Rolm by the ISOs, Rolm asserted copyright infringement claims against

15  the ISOs, asserting that in the course of servicing the PBXs, maintenance software on the PBX was

16  reloaded into the PBX's Random Access Memory ("RAM"), thus creating an unauthorized copy of

17  the software. *Id.* at 1321-1322. The ISOs responded that such copying was protected under Section

18  117(a); Rolm countered that the ISOs were not "owners" within the meaning of Section 117 and

19  therefore that section did not apply. The court agreed with the ISOs, holding, as a matter of law, that

20  the alleged copying did not constitute infringement. *Id.* at 1324-1325.

21       The court in *Telecomm* reasoned as follows:

22      Rolm notes that it licenses its software to end users and expressly retains ownership of all
23  copies. This fact, however, "does not preclude a finding that the [end users] are 'owners of a
    copy' for purposes of section 117." *DSC Communications v. Pulse Communications, Inc.*,
    976 F.Supp. 359, 362 (E.D.Va.1997). Rather, as the court noted in *DSC Communications*,
24  "[i]t is necessary to determine ownership of the copy, not whether the transaction . . .
    involved a license to use the program." *Id.*

25      In making its determination that the holders of the software were "owners" within the
26  meaning of section 117, the court in *DSC Communications* noted that, "the transaction
    involves a single payment, giving the buyer an unlimited period in which it has a right to
27  possession, making [the] transaction a sale." *Id.* The Court finds this analysis persuasive, and
    its application to the instant case leads to the same conclusion; because Rolm's software
28  license is granted for the life of the system and the initial purchaser pays one price for the

United States District Court
For the Northern District of California

1     software when it buys its PBX system, the Court finds that Rolm's end users are "owners"
2     within the meaning of section 117. Furthermore, because section 117 allows "owners" to
    "authorize the making of another copy" of a computer program, plaintiffs are also entitled to
3     the protections of section 117 since they were acting on behalf of their customers when they
    committed the alleged infringements. Accordingly, plaintiffs are entitled to summary
    judgment on these claims.

5   *Id.*

6        Burroughs contends (as did Rolm in *Telecomm*) that the Burroughs customers whose

7 machines Symco has serviced, are not "owners" within the meaning of Section 117 and therefore

8 Section 117(a)(1) does not apply. In support of its argument, Burroughs cites paragraph 89 of its

9 First Amended Complaint, in which it alleges that "Burroughs' customers . . . are not licensees and

10 they are prohibited from using Burroughs' diagnostic and maintenance software embedded in

11 machines they purchased or leased." Under the reasoning of *Telecomm*, this argument fails because

12 the question of whether a user holds a license to use software is separate from the question of

13 whether the user owns a *copy* of the software for the purposes of Section 117(a). Thus, the fact that

14 Burroughs' customers are not licensees of the software at issue does not answer the question of

15 whether they own a *copy* of the software for the purposes of Section 117(a).

16        Whether Burroughs customers are owners of copies of the programs at issue (assuming the

17 facts alleged to be true), however, is not as clearcut as Symco asserts. First, the reasoning of the trial

18 court in *DSC Communications v. Pulse Communications, Inc.*, 976 F.Supp. 359, 362 (E.D.Va.1997)

19 on the question of ownership under Section 117(a), which was adopted by the *Telecomm* court, was

20 rejected by the Federal Circuit on appeal. *See DSC Communications v. Pulse Communications, Inc.*,

21 170 F.3d 1354 (Fed. Cir. 1999). The Federal Circuit found that the mere fact that there had been a

22 sale of the software involving a single payment was not enough to give rise to "ownership" under

23 Section 117. *Id.* at 1361. Instead, the court looked to the terms of the purchase agreement sale,

24 finding that it "imposed more severe restrictions on [the purchaser] . . . than would be imposed on a

25 party who owned copies of software subject only to the rights of the copyright holder under the

26 Copyright Act." *Id.* As a result, the court concluded, the party who was accused of making a copy

27 was not an "owner" for the purposes of Section 117.

28

United States District Court

For the Northern District of California

Neither has the Ninth Circuit adopted the bright-line test that was articulated by the trial court in *DSC*, instead setting forth the following three factors for determining whether a party owns software for the purposes of Section 117 or is instead a licensee:[4]

> First, we consider whether the copyright owner specifies that a user is granted a license. Second, we consider whether the copyright owner significantly restricts the user's ability to transfer the software. Finally, we consider whether the copyright owner imposes notable use restrictions.

*Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1110 (9th Cir. 2010).  In *Vernor*, the court held that the recipient of software under a restrictive license was a licensee rather than an owner under Section 117.  *Id*. at 1111-1112.

Here, Burroughs has alleged that its customers "purchased or leased" its equipment to its customers.  FAC ¶ 89.  The terms of the purchases or leases, however, are not provided.  In light of the case law discussed above, the Court cannot conclude, as a matter of law, that Burroughs' customers are owners of the software at issue under Section 117(a)(1) – even though Symco may be able to establish that this affirmative defense applies based on the evidence.  Therefore, the question of whether this defense applies is more appropriately addressed at a later stage of the case, after the factual record has been developed.

### 3.    17 U.S.C. § 117(c)

Symco also asserts that Burroughs' copyright infringement claim fails as a matter of law under Section 117(c).  The Court concludes that the applicability of this affirmative defense, like the one discussed above, cannot be decided at the pleading stage of the case.

Section 117(c) provides as follows:

> Notwithstanding the provisions of Section 106, it is not an infringement for the owner or lessee of a machine to make or authorize the making of a copy of a computer program if such copy is made solely by virtue of activation of a machine that lawfully contains an authorized copy of the computer program, for purpose only of maintenance or repair of that machine, if–
>
> > (1) such new copy is used in no other manner and is destroyed immediately after the maintenance or repair is completed; and

---

[4]In *DSC*, the Federal Circuit criticized the Ninth Circuit's distinction between a licensee and an owner, articulated in *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1995), on the basis that an owner of a copy can also be a licensee.  170 F.3d at 160.  The Ninth Circuit in *Vernor*, however, noted that the Ninth Circuit has declined to revisit that distinction.  621 F.3d at 1110.

United States District Court

For the Northern District of California

1

2
>        (2) with respect to any computer programs or part thereof that is not necessary for the
>        machine to be activated, such program or part thereof is not accessed or used other
>        than to make such new copy by virtue of the activation of the machine.

3

4    17 U.S.C. §117(c).  Here, Burroughs alleges that its programs "do not automatically run on the

5    equipment when the equipment is turned on."  FAC, ¶ 70.[5]  While Symco may be able to establish

6    that this is not, in fact, how the software on Burroughs' equipment functions, the Court cannot say at

7    this stage of the case that Section 117(c) applies as a matter of law.

8          *Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Inc.*, 421 F.3d

9    1307 (Fed. Cir. 2005), cited by Symco, does not support a contrary result.  In *Storage Technology*,

10   the Federal Circuit reversed a district court decision issuing a preliminary injunction against an

11   independent service organization alleged to have engaged in copyright infringement.  *Id*. at 1315.

12   The appellate court found, based on *the evidence* that had been presented in the trial court, that the

13   independent service organization was likely to prevail on the merits on its Section 117(c) defense.

14   *Id*.  In other words, the decision did not address the sufficiency of the pleadings.  Further, on the

15   question of whether copies were made "solely by virtue of activation" of the machine in that case,

16   there was no dispute because the parties agreed that "the maintenance code [allegedly copied] [wa]s

17   so entangled with the functional code that the entire code must be loaded into RAM for the machine

18   to function at all."  *Id*. at 1314.  Finally, the court in *Storage Technologies* suggested that

19   freestanding maintenance programs would fall outside of the protection of Section 117(c).  *Id*. at

20   1313 ("[a]ccessing software programs, such as freestanding diagnosis and utility programs, that are

21   not needed to boot up the computer . . . goes too far [and therefore is not protected under Section

22   117(c)] because access to those programs is not strictly necessary to verify that the computer is

23   'working in accordance with its original specifications'").  Therefore, the Court finds that dismissal

24

25
_____

26         [5]Symco asserts that the Court should disregard this paragraph to the extent that it is found under
     the trade secrets claim and is not expressly incorporated into Burroughs' copyright infringement claim.
27   As the court has no reason to doubt that Burroughs' allegation applies equally to the copyright
     infringement claim, it deems Burroughs' First Amended Complaint amended to incorporate paragraph
28   70 into the allegations supporting its claim for copyright infringement.

United States District Court

For the Northern District of California

1    of Burroughs' copyright infringement claim under Section 117(c) is not appropriate at the pleading

2    stage of the case.

3         **C.    Claim Two (Violation of DMCA)**

4         Symco contends that Burroughs' DMCA claim in this action is barred by the dismissal with

5    prejudice of Burroughs' DMCA claim in the Georgia Action.  The Court agrees.

6         In the Motion, Symco invoked the doctrine of claim preclusion (also referred to as "res

7    judicata") in support of its contention that Burroughs' DMCA claim in this action is barred in its

8    entirety.  In order to determine the preclusive effect of the decision of the Georgia court, however,

9    the Court finds that it must also look to another doctrine, the doctrine of issue preclusion (also

10   referred to as collateral estoppel).  "The two doctrines [claim preclusion and issue preclusion] are

11   based on the same general principle: After a claim or issue is properly litigated, that should be the

12   end of the matter for the parties to that action." *Littlejohn v. U.S.*, 321 F.3d 915, 919 (9th Cir. 2003).

13   Both doctrines require a final judgment on the merits and that the party against whom the doctrine is

14   being asserted was a party or in privity with a party in the prior proceeding. *See Hydranautics v.*

15   *FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (issue preclusion); *Stewart v. U.S. Bancorp*,  297

16   F.2d 953, 956 (9th Cir. 2002) (claim preclusion). The scope of the doctrines is different, however.  In

17   particular, "the doctrine of issue preclusion prevents relitigation of all 'issues of fact or law that were

18   *actually litigated and necessarily decided*' in a prior proceeding." *Robi v. Five Platters, Inc.*, 838

19   F.2d 318, 322 (9th Cir. 1988) (quoting *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th

20   Cir.1979) (citation omitted) (emphasis added)).  In contrast, claim preclusion bars "all grounds for

21   recovery which could have been asserted, whether they were or not, in a prior suit between the same

22   parties . . . on the same cause of action." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201

23   (9th Cir. 1982) (citation omitted).

24        Here, there is no dispute that Burroughs was the plaintiff in the Georgia Action as well as

25   this action and therefore, that any final judgment in the Georgia Action may have preclusive effect

26   as to Burroughs.  Burroughs, however, argues that: 1) there was no final judgment in the Georgia

27   Action and therefore the dismissal with prejudice of the DMCA claim in the prior action has no

28   preclusive effect of any kind; and 2) even if the dismissal of the DMCA claim constituted a final

**United States District Court**
For the Northern District of California

1  judgment, it does not bar Burroughs' DMCA claim in this action because the claim asserted in this

2  Court is based on conduct that occurred after the complaint in the Georgia Action was filed and also

3  on somewhat different alleged conduct, namely, that Symco may have accessed Burroughs' software

4  using passwords *or* by use of other means of circumvention.

5          **1.**      **Final Adjudication on the Merits**

6       "The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with

7  prejudice.'" *Stewart*, 297 F.3d at 955 (citation omitted); *see also  Federated Dept. Stores, Inc. v.*

8  *Moitie*, 452 U.S. 394, 399 n.3 (1981) (dismissal under Rule 12(b)(6) constitutes final adjudication on

9  the merits for purposes of res judicata); *Herrera v. Countrywide KB Home Loans*,  2012 WL

10  901340, at *5 (N.D.Cal., March 15, 2012) (same).  Symco contends that because the DMCA claim

11  was dismissed *with prejudice* in the Georgia Action, this requirement is satisfied.   Burroughs, on the

12  other hand, contends that there was no final judgment on the merits because it voluntarily dismissed

13  the Georgia Action.  While neither party has cited to any authority that is directly on point, the Court

14  concludes that Symco is correct.  Burroughs' DMCA claim was dismissed on the merits and *with*

15  *prejudice*.  Burroughs' voluntary dismissal of the remaining claims in the Georgia Action has no

16  bearing on whether there was a final adjudication on the merits as to the DMCA claim asserted in

17  that action.  *See Palka v. City of Chicago*, 662 F.3d 428, 432 (7th Cir. 2011) (holding that where

18  court in prior action entered summary judgment on one claim and later permitted plaintiff to

19  voluntarily dismiss remaining claims, plaintiff could not relitigate claim on which summary

20  judgment was granted); *Lee v. Village of River Forest*, 936 F.2d 976 (7th Cir. 1991) (holding that

21  where court in prior action had granted a motion to dismiss for failure to state a claim dismissing all

22  claims and then permitted plaintiff to file a voluntary dismissal of the action, plaintiff could not

23  assert same claims in subsequent action).  Nor has Burroughs cited any authority suggesting that

24  where a federal court has dismissed a claim with prejudice, the party may assert the same claim in a

25  more favorable forum simply because it voluntarily dismissed its remaining claims in the prior

26  action.  Indeed, this is precisely the sort of conduct the doctrine of res judicata is intended to

27  prohibit.

28

**United States District Court**
For the Northern District of California

1      **2.     Identity of Claims**

2          Having found that the dismissal of the DMCA claim in the Georgia Action constitutes a final

3   judgment that may have preclusive effect as to Burroughs, the Court now must determine the extent

4   of the preclusive effect.   To resolve this issue, the Court looks to the case law addressing whether

5   there is an identity of claims for the purposes of issue and claim preclusion.

6          To determine whether a prior action involved the same claims for the purposes of claim

7   preclusion, courts look to the following factors:

8           (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether
           rights or interests established in the prior judgment would be destroyed or impaired by
9          prosecution of the second action; (3) whether the two suits involve infringement of the same
           right; and (4) whether substantially the same evidence is presented in the two actions.
10

11  *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 987 (9th Cir. 2005) (citing *Chao v. A-One*

12  *Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir.2003)).   The first factor is the most important.

13  *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982).   The Ninth Circuit uses a

14  "transaction test to determine whether the two suits share a common nucleus of operative fact[s]."

15  *Mpoyo*, 430 F.3d at 987 (citing *Int'l Union v. Karr*, 994 F.2d 1426, 1429-30 (9th Cir.1993)).  Under

16  that test, "[w]hether two events are part of the same transaction or series depends on whether they

17  are related to the same set of facts and whether they could conveniently be tried together."  *Id.*

18  (citing *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir.1992) (citing Restatement (Second)

19  Judgments § 24(2) (1982)).

20          In *Costantini v. Trans World Airlines*, the Ninth Circuit made clear that merely alleging a

21  new fact or a new legal theory does not avoid the bar of claim preclusion. 681 F.2d 1199, 1201 (9th

22  Cir. 1982).  "Rather, the crucial question is whether appellant has stated in the instant suit a cause of

23  action different from those raised in his first suit."  *Id*.  Thus, in *Constanti*, the court held that a

24  judgment in a prior action alleging unfair business practices based on falsehoods spread by the

25  defendant about the plaintiff barred a subsequent action based on a particular falsehood that had not

26  been alleged in the prior action.  *Id*. at 1202.  The court reasoned that the claim arose out of the same

27  transactional nucleus of facts regardless of the additional falsehood alleged in the later action, which

28  it characterized as merely an "evidentiary detail."  *Id*.

United States District Court

For the Northern District of California

1    Applying the standard set forth above, the Court concludes that the new factual allegation in

2    the instant action  – namely, that the circumvention might have been accomplished through means

3    other than unauthorized use of passwords – does not provide a sufficient basis for finding that the

4    DMCA claim in the Georgia action was different from the DMCA claim asserted in this action.  To

5    the contrary, regardless of *how* the programs were accessed, the transactions alleged are the same in

6    both actions, at least as to conduct that occurred up to the time the Georgia court dismissed the

7    DMCA claim with prejudice.  In particular, any claim that Symco's alleged circumvention was

8    being accomplished by means other than use of passwords could have been asserted in the Georgia

9    Action, at least up to the point that the Georgia court dismissed Burrough's DMCA claim with

10   prejudice, on December 13, 2011.  *See Lawlor v. National Screen Service Corp.* 349 U.S. 322, 328

11   (1955) (holding that claim preclusion did not bar claims that arose after judgment was entered in

12   prior action and stating that "[w]hile [a prior] judgment precludes recovery on claims arising prior to

13   its entry, it cannot be given the effect of extinguishing claims which did not even then exist and

14   which could not possibly have been sued upon in the previous case").[6]

15   As to conduct that occurred *after* the Georgia court dismissed the DMCA claim in that

16   action, the doctrine of issue preclusion, or collateral estoppel, applies to Burroughs' claim.  That

17   doctrine applies to issues that were actually decided in an earlier action, even if the conduct occurred

18   after judgment was entered in the prior action.  *See Go-Video, Inc. v. Matsushita Elec. Indus. Co. (in*

19   *re Dual-Deck Video Cassette Recorder Antitrust Litig.*), 11 F.3d 1460, 1463 (9th Cir. 1993) (holding

20   that where prior judgment addressed what was essentially the same conduct, even though it occurred

21   after judgment was entered, claim based on that conduct was barred under the doctrine of collateral

22

23   _____

24   [6]The case law offers scant guidance as to the temporal reach of claim preclusion under the
circumstances here, where a single claim was dismissed with prejudice while remaining claims were
voluntarily dismissed on a later date.  In *Lawlor*, the Supreme Court identified the relevant date as the

25   date of entry of judgment in the prior action; here, the Court finds that the relevant date is the date on
which the the DMCA claim in the Georgia Action was dismissed with prejudice because that is the date

26   the Georgia court decided on the merits that the DMCA claim was subject to dismissal with prejudice.
To the extent that an argument might be made that a later date should be used (for example, the date the

27   Georgia Action was voluntarily dismissed), that argument has been waived by Symco, which has taken
the position that the date of the Georgia court's order dismissing the DMCA claim is the relevant date.

28   Reply at 5-6.

United States District Court

For the Northern District of California

1    estoppel and noting that "[d]istinct conduct is alleged only in the limited sense that every day is a

2    new day, so doing the same thing today as yesterday is distinct from what was done yesterday").

3    Because the doctrine of issue preclusion applies only to claims that were actually litigated, however,

4    it does not preclude Burroughs' DMCA claim to the extent it is based on circumvention by means

5    other than use of passwords.  The complaint in the Georgia Action did not allege that other means of

6    circumvention were used, nor did the Georgia court's December 13 Order address this alternative

7    scenario.  Therefore, while issue preclusion bars Burroughs' DMCA claim to the extent it is based

8    on unauthorized use of passwords, regardless of whether the alleged conduct occurred before or after

9    the dismissal in the Georgia Action, it does not reach the claim to the extent it is based on other

10   methods of circumvention.

11          Taking into account the preclusive effect that arises from the decision of the Georgia court

12   under the two doctrines discussed above, that is, issue preclusion and claim preclusion, the Court

13   concludes that Burroughs' DMCA claim is barred *except* as to circumvention that occurred after

14   December 13, 2011 using means other than unauthorized use of passwords.  Because Burroughs

15   filed its original complaint in this action on the same date the Georgia court dismissed its DMCA

16   claim, on December 13, 2011, it appears this exception does not encompass any of the conduct

17   alleged in the instant action in connection with Burroughs' DMCA claim.  Therefore, the DMCA

18   claim, as currently pleaded, is barred in its entirety.  Burroughs will be permitted to amend its

19   complaint to assert a DMCA claim that is consistent with this decision, that is, a claim that is limited

20   in scope to circumvention other than unauthorized use of passwords and is directed at conduct that

21   occurred after December 13, 2011.

22          **D.      Claim Three (Misappropriation of Trade Secrets under CUTSA)**

23           To state a claim for misappropriation of trade secrets under the CUTSA, Burroughs must

24   plead two primary elements: (1) the existence of a trade secret; and (2) misappropriation of the trade

25   secret.  *AccuImage Diagnostics Corp v. Terarecon, Inc*., 260  F.Supp.2d 941, 947 (N.D. Cal.

26   2003)(citing Cal. Civ.Code § 3426.1(b)).   Symco contends that neither element is sufficiently

27   pleaded.  The Court disagrees.

28

United States District Court

For the Northern District of California

1       **1.**     **Existence of a Trade Secret**

2     The CUTSA defines a trade secret as follows:

3       (d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

4

5       (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

6

7       (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

8 Cal. Civ. Code Section 3426.1.  The Ninth Circuit has held that a plaintiff asserting a violation of the

9 CUTSA "should describe the subject matter of the trade secret with sufficient particularity to

10 separate it from matters of general knowledge in the trade or of special knowledge of those persons .

11 . . skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-1165 (9th Cir.

12 1998)(quoting *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F.Supp. 1170, 1177

13 (C.D.Cal.1989) (quoting *Diodes, Inc. v. Franzen,* 260 Cal.App.2d 244, 253 (1968)).  This standard is

14 drawn from the California court of appeal's decision in *Diodes, Inc. v. Franzen.*[7]

15     In *Diodes*, the plaintiffs alleged that the defendant had misappropriated a "secret process" but

16 provided no details from which the court, or the defendant, could determine what "secret process"

17 was alleged to have been misappropriated.  260 Cal. App. 2d at 251-253.  The court held that the

18 allegations were insufficient to survive a demurrer, stating as follows:

19       The difficulty with the third amended complaint is the failure of plaintiff to plead facts showing that it ever had any trade secret to protect. . . .

20

21       One who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details of the trade secret to avoid a demurrer to a complaint. To so require would mean that the complainant would have to destroy the very thing for which he sought

22

23

24       [7] In the *Diodes* case, decided by a California appellate court, the court noted that federal cases addressing the sufficiency of allegations relating to claims for misappropriation of trade secrets were not helpful because federal courts, unlike California state courts, adhere to notice pleading under Rule 8 of the Federal Rules of Civil Procedure. 260 Cal. App. 2d at 250.  Nonetheless, in *Imax* (quoted

25 above), the Ninth Circuit adopted the standard articulated in *Diodes* and federal courts in the Ninth Circuit look to *Diodes* for guidance on the adequacy of allegations supporting claims under the CUTSA.

26 *See, e.g., Premiere Innovations, Inc. v. IWAS Industries, LLC*,  2007 WL 2873442, at *4 (S.D.Cal.,

27 September 28, 2007) (citing *Diodes* in support of holding that claim for misappropriation of trade secrets was adequately pleaded under Rule 12(b)(6)).

28

United States District Court

For the Northern District of California

protection by making public the secret itself. . . . The plaintiff must nevertheless allege the ultimate facts showing the existence of a trade secret or other confidential data to state such a cause of action. An averment simply that the plaintiff has a "secret process" is a bare legal conclusion. . . .

Before a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.

*Id*. at 252-253.  The court went on to acknowledge that "[n]o more comprehensive rules for pleading can be generally enunciated because no inclusive definition of trade secrets is possible." *Id*. at 253. Rather, the question of whether a trade secret has been adequately identified depends, at least to some degree, upon the nature of the trade secret alleged.

Symco contends that in the case of software, generally only the human readable source code is maintained as a trade secret, whereas the executable file that is made from the source code is not. Motion at 13.  Because Burroughs has not alleged, however, that any user of CSE and the MTRs actually saw the source code, and because the images that appear on the screens when these programs are run *cannot* be trade secrets as a matter of law, Symco asserts, Burroughs fails to meet the pleading standard set forth in *Diodes* and approved in *Imax*.   The Court disagrees.

First, Burroughs does not allege that its source code has been misappropriated; rather, it alleges that its trade secrets are the password protected materials discussed above.  Second, the question of whether these materials can be trade secrets cannot be decided on the pleadings.  In support of a contrary result, Symco apparently relies on the rule that "[a]lthough secrecy is a question of fact, . . . courts have held that there can be no trade secret protection, as a matter of law, if the secrecy is necessarily lost when the design or product is placed on the market."  *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F.Supp.2d 492, 498 (S.D.N.Y., 2002).  Thus, for example, in *LinkCo*, the court held on a motion for judgment as a matter of law following a jury trial that the plaintiff had not established the existence of a trade secret where the alleged secret was only the software "architecture," which would be "easily ascertainable by the public once the product [was] marketed."  *Id*.  Similarly, in *Servicetrends, Inc. v. Siemens Med. Sys*., 870 F. Supp. 1042, 1074 (N.D. Ga. 1994), the court held, on summary judgment, that various service manuals that were

United States District Court

For the Northern District of California

alleged to be trade secrets were not entitled to protection under Georgia's uniform trade secrets act because the undisputed evidence showed that the plaintiff widely distributed the manuals to its customers.  The allegations here are distinguishable from the facts in *LinkCo* and *Sevicetrend* because Burroughs has alleged that the trade secrets at issue are *not* by necessity available to the public once the software (or the equipment containing it) is placed on the market; rather they can only be accessed by authorized individuals by entering a password.  *See* FAC, ¶¶ 11-13, 84-89. Therefore, the Court cannot hold, as a matter of law, that these materials cannot be trade secrets based on the facts alleged in the First Amended Complaint.

### 2.    Misappropriation

Symco contends that Burroughs has also failed to state a claim because it has not alleged any act that constitutes misappropriation under the CUTSA.  The Court finds that Burroughs has sufficiently pleaded misappropriation.[8]

Under the CUTSA, "misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

---

[8]In its Opposition, Burroughs contends that the Court should deny Symco's motion as to the trade secret misappropriation claim on the basis that the Georgia court found that the same claim was adequately pleaded.  At oral argument, however, Burroughs conceded that the doctrine of res judicata does not apply to this claim as there was no final adjudication of the claim.

Cal. Civ. Code Section 3426.1(b).  Burroughs has adequately pleaded that its trade secrets were misappropriated under the CUTSA by alleging that Symco improperly used passwords or other circumvention methods to access Burroughs' trade secrets, namely, diagnostic tools and screen images, that Symco knew it was not authorized to access these trade secrets, and that it used these trade secrets to service the equipment of Burroughs' customers, thereby benefitting from its use of Burroughs' trade secrets.

*Silvaco Data Systems v. Intel Corp.*, 184 Cal.App.4th 210 (2010), does not support a contrary result.  In that case, the court held on summary judgment that where the alleged trade secret was the source code, merely executing and running the programs did not constitute misappropriation because there was no "use" within the meaning of the CUTSA.  *Id*. at 224.  The court reasoned as follows:

> One clearly engages in the "use" of a secret, in the ordinary sense, when one directly exploits it for his own advantage, e.g., by incorporating it into his own manufacturing technique or product. But "use" in the ordinary sense is not present when the conduct consists entirely of possessing, and taking advantage of, something that was made using the secret. One who bakes a pie from a recipe certainly engages in the "use" of the latter; but one who eats the pie does not, by virtue of that act alone, make "use" of the recipe in any ordinary sense, and this is true even if the baker is accused of stealing the recipe from a competitor, and the diner knows of that accusation. Yet this is substantially the same situation as when one runs software that was compiled from allegedly stolen source code. The source code is the recipe from which the pie (executable program) is baked (compiled). Nor is the analogy weakened by the fact that a diner is not ordinarily said to make "use" of something he eats. His metabolism may be said to do so, or the analogy may be adjusted to replace the pie with an instrument, such as a stopwatch. A coach who employs the latter to time a race certainly makes "use" of it, but only a sophist could bring himself to say that coach " uses" trade secrets involved in the manufacture of the watch.

*Id*.  The reasoning in *Silvaco* does not apply here, however, because the alleged trade secrets are the materials and screen images that are allegedly accessed by Symco without authorization rather than the source code.  Thus, in contrast to simply executing source code, which the court in *Silvaco* likened to eating a pie made with a secret recipe, Symco is alleged to have used secret information it improperly obtained to service the equipment of Burroughs customers, which might be analogized to actually *reading* the secret recipe in order to bake the pie.  Therefore, the Court concludes that *Silvaco* does not support dismissal of Burroughs' trade secret misappropriation claim at this stage of the case.

**IV.    CONCLUSION**

For the reasons stated above, the Motion is Granted in part and Denied in part as follows:

1)   the Motion is DENIED as to Burroughs' claim for copyright infringement (Claim One);

2)   the Motion is GRANTED as to Burroughs' DMCA claim (Claim Two), which is dismissed with prejudice *except* to the extent that Burroughs shall be permitted to amend to assert a DMCA claim based on circumvention methods other than unauthorized use of passwords for conduct that occurred after December 13, 2011.

3)   the Motion is DENIED as to Burroughs' CUTSA claim (Claim Three).

Any amended complaint shall be filed within 30 days of this Order.  If no amended complaint is filed, the Answer shall be due within 45 days of this Order.

IT IS SO ORDERED.

Dated: May 14, 2012

_____
JOSEPH C. SPERO
United States Magistrate Judge

**United States District Court**
For the Northern District of California

25